JAMIE BERDEN MACLAM,

      Petitioner,

v.

MILLICENT WARREN,

      Respondent,

_____/

CASE NO. 4:05-CV-40371
HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Jamie Berden Maclam, ("petitioner"), presently confined at the Southern Michigan Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction on one count of first-degree felony murder, M.C.L. 760.316(1)(b); two counts of second-degree murder, M.C.L. 750.317; eight counts of possession of a firearm in the commission of a felony [felony-firearm], M.C.L. 750.227b; four counts of assault with intent to rob while armed, M.C.L. 750.89; two counts of assault with intent to do great bodily harm less than murder, M.C.L. 750.84; and one count of felon in possession of a firearm, M.C.L. 750.224f. For the reasons stated below, the petition for writ of habeas corpus is denied.

## I. Background

      Petitioner was convicted of the above offenses following a jury trial in the Calhoun County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from

the Michigan Court of Appeals' opinion affirming his conviction, facts which are presumed correct

on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> This case involves the brutal attack of four women inside the King's Garden Health Spa, (hereinafter "King's Garden"), in the early morning hours of January 27, 1999. Defendant, Darrin Mills and Chavez Hall were tried separately for the offenses arising out of the incident.
>
> Testimony at trial established that defendant, Mills, and Hall and [sic] were smoking marijuana and drinking alcohol. Defendant suggested to Mills and Hall that they "hit a lick." Surmising that King's Garden would likely have money on the premises because of their belief that the employees sold drugs and were involved in prostitution, they proceeded to that location. There were four women present at King's Garden when defendant, along with Mills and Hall, arrived. After forcibly taking money at knife and gunpoint, defendant, Mills and Hall proceeded to beat all four victims. As a result of the assaults, all of the victims sustained lacerations and other injuries and one victim withstood a sexual assault. Before leaving, defendant, Mills and Hall poured gasoline in the premises and started a fire. Two of the women died as a result of the attacks. The third woman suffered a collapsed lung from a stab wound inflicted upon the upper region of her back. In addition to several lacerations, she also suffered carbon monoxide poisoning. The fourth woman had a broken arm, burns, and lacerations.
>
> The pretrial publicity surrounding this case was extensive. Indeed, newspaper articles were both factual and sensational. Newspaper accounts detailed defendant's prior criminal record and his confession. The trial court denied a motion for change of venue based on pretrial publicity. After a lengthy trial, the jury convicted defendant. Defendant now appeals as of right. We affirm.
>
> *People v. Maclam,* No. 223463, slip op. at * 1-2 (Mich. Ct. App. Nov. 13, 2001).
>
> Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 661 N.W. 2d 578 (2002).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R.

6.500, *et. seq.,* which was denied. *People v. Maclam,* No. 99-1134-FC (Calhoun County Circuit

Court, June 27, 2003). The Michigan appellate courts denied petitioner leave to appeal pursuant to

M.C.R. 6.508(D). *People v. Maclam,* No. 256045 (Mich. Ct. App. Jan. 3, 2005); *lv. den.* 474 Mich.

897, 705 N.W. 2d 125 (2005).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Defendant-Appellant's conviction should be reversed because the trial court improperly denied the request for a change in venue.

II. Defendant-Appellant's conviction should be reversed because the trial court improperly found the statement of defendant to be voluntary.

III. There was insufficient evidence to sustain Defendant-Appellant's convictions for first degree felony murder, violating Mr. Maclam's due process rights.

IV. Defendant Maclam was denied his due process rights to a fair trial where the prosecution's witnesses repeatedly injected prejudicial unresponsive statements throughout the trial and defendant was denied his Sixth Amendment right to the effective assistance of trial counsel where counsel failed to move for a mistrial. US Const Am's V, VI, XIV.

V. Where the trial judge favored the prosecution in his rulings and exhibited an obvious bias towards defendant and defense counsel and the judge failed to control the proceedings in a fair manner thereby deprived Mr. Maclam of his State and federal constitutional rights to a fair trial.

VI. The prosecutor's pronounced and persistent misconduct requires reversal where the misconduct deprived Mr. Maclam of his due process rights to a fair trial and if trial counsel waived appellate review of those instances of misconduct to which he did not object then counsel's failure to object deprived Mr. Maclam of effective assistance of trial counsel.

VII. Defendant was denied his due process rights to a fair trial and impartial and indifferent jury by the barrage of pretrial and trial publicity and the trial court abused its discretion in denying defendant's motion for change of venue.

VIII. Defendant's sentences of life imprisonment for second degree murder, forty (40) to (60) years of imprisonment for each assault with intent to rob while armed is disproportionate and constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

IX. Defendant/Appellant was denied his due process rights by the cumulative error of errors.

X. Defendant/Appellant was denied effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his direct appeal, thus, cause and prejudice has been demonstrated.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Brown v. Payton*, 544 U.S. 133, 141 (2005)(citations omitted).  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III.  Discussion.

**A. Claims # 1 and # 7. The pretrial publicity claim.**

The Court will consolidate petitioner's first and seventh claims because they are essentially the same. Petitioner first claims that the trial court erred when it denied his motion for a change of venue because of the extensive pretrial publicity in this case.

In rejecting petitioner's claim, the Michigan Court of Appeals noted that the trial court judge had denied petitioner's motion for a change of venue because all of the fourteen jurors who had been impaneled had either indicated that they knew nothing about the case or if they had heard, seen, or read anything about the case, they could put that information aside. The jurors who had any familiarity with the case had also indicated that they would be fair to both sides and would base their decision solely on the evidence that was presented at trial. After "careful scrutiny of the record and affording due deference to the trial court," the Michigan Court of Appeals concluded that the pretrial publicity was not so "invidious" and "inflammatory" as to deny petitioner a fair trial. *Maclam,* Slip. Op. at * 2-3. The Michigan Court of Appeals further concluded that the trial court judge's *voir dire* method was sufficient to ensure that an impartial jury was selected, in that the trial judge asked the jurors if they had any prior information about the case and those that answered in the affirmative were then asked whether they had formed an opinion about the case. In addition, the trial court judge permitted the attorneys to question the jurors and did not impose a time or content limitation upon the attorneys. *Id.*

There are two types of prejudice which can arise in cases where jurors are exposed to pretrial publicity. Prejudice to a defendant can be presumed in cases where the influence of the news media, either in the community at large, or in the courtroom itself, "pervaded the

5

proceedings." *Murphy v. Florida*, 421 U.S. 794, 798-799 (1975)(internal citations omitted). However, pretrial publicity, even pervasive adverse publicity, does not inevitably lead to an unfair trial. *See De Lisle v. Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998). The "indicia of impartiality" on the part of a jury is disregarded only in those cases "where the general atmosphere in the community or the courtroom is sufficiently inflammatory." *Id.* at 382 (quoting *Murphy,* 421 U.S. at 802). The mere prior knowledge of the existence of a case, or familiarity with the issues involved, or even some pre-existing opinion as to the merits of the case, does not in and of itself raise a presumption of jury taint. *De Lisle,* 161 F. 3d at 382.

A person is not automatically rendered unqualified to serve as a juror merely because he or she has been exposed to media coverage of the charged offense. Instead, the issue becomes whether the exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law with respect to the evidence presented. *Dell v. Straub,* 194 F. Supp. 2d 629, 654 (E.D. Mich. 2002).

The U.S. Supreme Court has emphasized the negative effect of pretrial publicity when the publicity amounts to an "out-of-court campaign to convict", reflecting "inflamed public sentiment." *De Lisle*, 161 F. 3d at 385 (quoting *Shepherd v. Florida*, 341 U.S. 50, 52-53 (1951)). However, coverage that consists of "straight news stories rather than invidious articles which tend to arouse ill will and vindictiveness" are not so troubling. *Id*. at 385 (quoting *Beck v. Washington*, 369 U.S. 541, 556 (1962)). In the present case, petitioner has presented no evidence that demonstrates the existence of the type of extensive or inflammatory pretrial publicity that has been condemned by the U.S. Supreme Court. The Court has reviewed the newspaper articles that petitioner has attached

6

to his petition and finds that they are not so numerous or inflammatory so as to render petitioner's trial unfair, particularly where the vast majority of the stories simply provided "bare-bones facts" about petitioner's case. *See Deel v. Jago,* 967 F. 2d 1079, 1087-88 (6th Cir. 1992).

In addition, there is nothing in the record or the habeas petition to indicate that the courthouse in petitioner's trial was "conducted in a circus atmosphere, due in large part to the intrusion of the press." *Murphy*, 421 U.S. at 799 (quoting *Estes v. Texas*, 381 U.S. 532(1965)). Petitioner has presented no evidence to demonstrate that the general atmosphere in the community or courtroom was "sufficiently inflammatory" for either the Michigan courts or this Court to disregard the jury's "indicia of impartiality." *Murphy*, 421 U.S. at 802. In this case, there are no allegations made by petitioner that his trial took place under the conditions of "total chaos" that prevailed in cases like *Estes* or *Sheppard. See Sheppard v. Maxwell*, 384 U.S. 333 (1966). A review of those cases leaves no doubt that it was "that chaos which drove those decisions." *DeLisle*, 161 F. 3d at 384 (citing to *Murphy v. Florida,* 421 U.S. at 799). Because the record does not indicate that petitioner's trial took part in a "circuslike atmosphere", the Court cannot presume prejudice to petitioner's case merely because the jurors were exposed to pretrial publicity about his case. *Dell,* 194 F. Supp. 2d at 655; *See also United States v. Robinson,* 366 F. Supp. 2d 498, 512 (E.D. Mich. 2005).

Petitioner has also failed to show actual prejudice to his case from the jurors' exposure to the pretrial publicity. To demonstrate actual prejudice, a habeas petitioner must show that one or more jurors entertained an opinion before trial that petitioner was guilty and that these jurors could not put this prejudice aside and render a verdict based solely upon the evidence. *Dell,* 194 F. Supp.

2d at 655. The test for whether pretrial publicity necessitates a change in venue is whether a juror exposed to pretrial publicity can lay aside his or her impression or opinion and render a verdict based upon the evidence presented in court. *Id.*

The partiality of a petit jury is evaluated in light of the persons who are ultimately empaneled and sworn, and not by those who are excused from service. *Dell,* 194 F. Supp. 2d at 655. In the present case, only six prospective jurors indicated that they had read or heard news stories about the case and could not be fair towards petitioner. These jurors were excused by the trial court. Therefore, petitioner is unable to show that the jury as impaneled was prejudiced towards him because of the news coverage in this case.

In this case, there is nothing from the record to show that any pretrial publicity tainted the jury pool where none of the jurors that served on petitioner's jury indicated that they had formed an opinion about petitioner's guilt or innocence from the stories that they had read or heard about either from the media or from persons in the community. A prospective juror's exposure to pretrial publicity does not merit his or her disqualification where the juror states unequivocally that he or she would decide the case on the facts brought out at trial. *McQueen v. Scroggy*, 99 F. 3d 1302, 1319 (6th Cir. 1996). Petitioner has failed to establish actual prejudice on the part of these jurors in light of the fact that all of the jurors seated indicated that they had not formed an opinion about the case from their pre-trial exposure to stories about the case and would base their judgment solely upon the evidence introduced in the trial court. *Dell,* 194 F. Supp. 2d at 656.

Petitioner also contends that the trial court judge should have engaged in a much more detailed and individualized *voir dire* of each potential juror concerning the issue of the jurors'

exposure to pretrial publicity.

The Supreme Court has "stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias." *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991). The Supreme Court in *Mu'Min* held that a state court's refusal to question prospective jurors individually about the specific contents of news reports to which they had been exposed did not violate the defendant's Sixth Amendment right to an impartial jury or his right to due process under the 14th Amendment, holding that individualized and content-based questions were not constitutionally mandated. *Id.* at 417; *see also Richie v. Rogers*, 313 F.3d 948, 961-63 (6th Cir. 2002)(("[T]he majority [in *Mu'Min*] found no error in the trial court's denial of individual voir dire and approved the trial court's refusal to allow prospective jurors to be questioned about specific contents of news reports."). Therefore, the state trial court's failure to conduct individualized and content-based questions concerning the potential jurors' exposure to pretrial publicity was not contrary to, or an unreasonable application of, clearly established law that would entitle petitioner to habeas relief.

**B. Claim # 2. The involuntary confession claim.**

Petitioner next contends that the trial court erred in refusing to suppress his confession.

A *Walker* [1] hearing was conducted before the state trial court on June 14, 1999 to challenge petitioner's waiver of his *Miranda* rights and the voluntariness of his confession. Deputy Todd Miller testified that on February 1, 1999 he was assigned to handle an assault complaint at the Calhoun County Jail, in which petitioner was the alleged aggressor. Deputy Miller interviewed

---

[1] *People v. Walker*, 374 Mich. 331; 132 N. W. 2d 87 (1965).

petitioner at the administrative segregation unit of the jail at approximately 1:00 p.m.  Petitioner

was advised of his *Miranda* rights before the interview.  Petitioner's physicial condition was

normal and he was coherent, but he appeared upset to Miller.  Petitioner was not handcuffed.

Deputy Miller explained to petitioner that there was no reason to be upset, because the investigation

involved a simple assault.  When petitioner continued to be upset, Miller asked petitioner if

something else was the matter.  Petitioner told Deputy Miller that "they" were trying to "pin" the

King's Garden crimes on him.  Deputy Miller testified that he told petitioner that he could not talk

with him about this crime but that if petitioner wanted, Miller would make arrangements for him

to talk with the prosecutor's office.  Petitioner continued to be upset and stated that he didn't kill

any women.  Petitioner then said that he wanted to talk with someone and to possibly make a deal.

Miller informed petitioner that he was in no position to make a deal, but that it would be up to the

prosecutor's office.  Miller returned petitioner to his cell and contacted the prosecutor's office.

Deputy Miller testified that during their conversation, petitioner indicated that he was

concerned for his safety in jail and wanted to be moved.  Deputy Miller told petitioner that the

Barry County Jail was a possibility but that this was something that he could not do, rather, it would

have to be arranged between the various sheriff's offices and the prosecutor's office.  Although he

said he would look into the matter, Deputy Miller denied promising a jail transfer to petitioner.

Deputy Miller testified that petitioner never asked for an attorney while speaking with him.

Detective David Adams of the Battle Creek Police Department was in the Calhoun County

Prosecutor's Office on the afternoon of February 1, 1999 when he was informed that petitioner

wanted to make a statement.  Petitioner was interviewed later that day in the library at the

prosecutor's office. Prior to the interview, Detective Adams again advised petitioner of his *Miranda* rights. When petitioner told Detective Adams that he had discussed a jail transfer with Deputy Miller, Adams informed petitioner that this would be up to the jail personnel and he had no control over that. Petitioner stated that he understood his rights and wished to make a statement. Detective Adams denied making any promises or threats to petitioner. Petitioner never requested food or water and the interview lasted 45 to 60 minutes. Detective Adams indicated that petitioner had a lengthy criminal history, which included 44 police contacts and 19 arrests.

Petitioner testified that he was twenty two years old with a tenth grade education. Petitioner admitted that he had been arrested before and had his *Miranda* rights read to him on prior occasions. Petitioner claimed that Deputy Miller did not read him his *Miranda* rights before talking to him, although he knew what such rights were. Petitioner claimed that there was "somewhat" of an agreement for him to be transferred to the Barry County Jail and that Deputy Miller had told him that he would look into it. Petitioner claimed that he had told both Deputy Miller and Detective Adams that he wanted to consult with a lawyer, but he agreed to waive his right to an attorney because Adams had told petitioner that he could not talk to him if he wanted an attorney. Petitioner indicated that he spoke to the police because he wanted to clear his name and also because he sought a transfer to another jail. Petitioner testified that he wanted a jail transfer not because of a fear of other inmates, but of the jail staff. Petitioner claimed that he had a "funny feeling" that he would not be treated properly by jail staff, although he had not had problems in the past with them. Petitioner further indicated that his fear was not for his personal safety, but that he would be denied jail privileges. Petitioner acknowledged that Detective Adams had not made any promises.

The trial court denied the motion to suppress, finding that Detective Adams had complied with *Miranda* and that petitioner had waived his rights. The court noted that petitioner had an extensive history of contacts with the police. The court further found that Deputy Miller's assertions that he would look into a transfer did not rise to the level of an improper promise.

In rejecting petitioner's claim on appeal, the Michigan Court of Appeals likewise noted that petitioner was a twenty-two-year-old man with a tenth grade education. Petitioner has an extensive prior record and numerous encounters with the police. Petitioner admitted that he had been in jail on eleven occasions and acknowledged his familiarity with his *Miranda* rights. The interview was relatively brief, lasting only forty-five to sixty minutes. Petitioner was advised of his *Miranda* rights. Petitioner did not claim that he was injured, intoxicated, or drugged when he made the confession. Defendant also did not complain that he was deprived of food, sleep, or medical attention. The Michigan Court of Appeals concluded that petitioner's confession was voluntary. *Maclam,* Slip. Op. at * 5-6.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F. 3d 1062, 1067 (6th Cir. 1994).

An involuntary confession may result from psychological, no less than physical, coercion

or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

A federal court must look at the totality of the circumstances to determine whether a defendant's confession is voluntary. *Ledbetter,* 35 F. 3d at 1067. "[F]actors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

The state court determination that petitioner's confession was voluntary was not contrary to, or an unreasonable application of, clearly established federal law, and thus did not warrant federal habeas relief, where petitioner was twenty two years old at the time he made his statement, had extensive prior contacts with the police, and was thus familiar with criminal procedures, was not deprived of necessary nourishment, medical care, sleep, or other essentials while in custody, and was advised of his *Miranda* rights by police prior to being questioned and waived those rights. *See Payne v. Smith,* 207 F. Supp. 2d 627, 646 (E.D. Mich. 2002).

Although petitioner claims that Deputy Miller promised to transfer him to another jail, Deputy Miller denied making any such promise.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police,

such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller*, 474 U.S. at 112. Likewise, whether a defendant understood his or her *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence. *Williams v. Jones,* 117 Fed. Appx. 406, 412 (6th Cir. 2004); *See also Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002). The presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 Fed. Appx. 445, 448 (6th Cir. 2003)(citing *McQueen*, 99 F. 3d at 1310). Although the trial court did not specifically find that no promises of leniency had been made by Deputy Miller, by ruling that petitioner's confession was voluntary, the trial court and the Michigan Court of Appeals both implicitly found that no promises of leniency had been made to induce petitioner's confession.

In this case, petitioner is not entitled to habeas relief, because he has failed to offer any evidence, clear and convincing or otherwise, to rebut the findings by the Michigan courts that he understood the rights that were read to him, so as to entitle him to habeas relief. *Williams,* 117 Fed. Appx. at 412. Likewise, the state courts' finding that the police made no promises to induce an incriminating statement from petitioner, so that his statement was voluntarily made, is entitled to the presumption of correctness, because petitioner has failed to present clear and convincing evidence to rebut this presumption. *Pritchett v. Pitcher*, 117 F. 3d 959, 963-64 (6th Cir. 1997).

Because petitioner has failed to present clear and convincing evidence to rebut this presumption, he is not entitled to challenge the state courts' credibility determination concerning the voluntariness of his confession on habeas review. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005). Petitioner is not entitled to habeas relief on his second claim.

**C. Claim # 3. The sufficiency of evidence claim.**

Petitioner next contends that there was insufficient evidence to sustain petitioner's conviction for first-degree felony murder.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell*, 194 F. Supp. 2d at 647. The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry,* 208 F. Supp. 2d at 794. Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F. Supp. 2d 651, 661 (E.D. Mich. 2003).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;

(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460

Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The facts and circumstances surrounding a killing can give rise to an inference of malice.

A factfinder can infer malice from evidence that a defendant intentionally set into motion a force

likely to cause death or great bodily harm. *Terry,* 208 F. Supp. 2d at 794.

To support a finding under Michigan law that a defendant aided and abetted in the

commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Long,* 450 F. Supp. 2d at 753 (citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting

theory, the prosecutor must show that someone killed the victim during the underlying predicate

felony, that the defendant assisted that person in killing the victim, and that the defendant either

intended to commit the crime or he knew when he gave the assistance that the other person intended

to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing

*People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious

taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

In the present case, the Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was not an unreasonable application of clearly established federal law. The evidence established that petitioner agreed to participate in an armed robbery with the other co-defendants. Petitioner was armed with a firearm and hit several of the victims with it while demanding money. One of the surviving victims testified that she gave petitioner her jewelry and her purse in response. A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See e.g. Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)(collecting cases)*; See also Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003).

One of the surviving victims testified that she observed the victim whom petitioner was convicted of murdering flee into a room and place a massage bed in front of the door to the room. Petitioner went into the room and knocked the bed onto the victim. The witness observed petitioner repeatedly jump on the bed with the victim lying beneath, while laughing, as the victim begged for him to stop jumping because she believed that her leg was broken. Eventually, the deceased victim

stopped crying and later died as a result of the injuries inflicted by petitioner. Before leaving the premises, petitioner and his co-defendants poured gasoline and started a fire. The pathologist's findings from the autopsy established that the victim had burns, bruises, lacerations, and cuts on her body. The victim also had a fractured right index finger, injuries to her head from blunt force, as well as a fractured pelvis, which caused significant internal injuries. The pathologist testified that this injury could be caused by a direct impact, such as someone stomping on the victim.

In the present case, there was sufficient evidence which would allow a rational trier of fact to conclude that petitioner was guilty of first-degree felony murder, either as the principal, or as an aider and abettor. Petitioner is therefore not entitled to habeas relief on his third claim. To the extent that petitioner challenges the credibility of the witnesses, such a determination is beyond this Court's review. A court that reviews a sufficiency of evidence claim does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "[D]etermination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review." *Alder,* 240 F. Supp. 2d at 661. An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

**D. Claims # 4, 5, 6, 8, and 9. The procedurally defaulted claims.**

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show

cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Id.* at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.

M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

In the present case, the Calhoun County Circuit Court denied petitioner's motion for relief from judgment, on the grounds that "the issues identified by the Defendant justifying the relief sought were fully resolved by the appellate courts, or, in the alternative, waived by virtue of not being pursued in the original appeal." *People v. Maclam,* No. 99-1134-FC (Calhoun County Circuit Court, June 27, 2003). The post-conviction court further found that the claimed errors, even if true, did not constitute "a miscarriage of justice." *Id.*

Although the trial court did not specifically mention 6.508(D)(3) in its opinion, the trial court's opinion was nonetheless sufficient to invoke the procedural bar contained in that rule

because the state trial court denied petitioner's motion "in language taken almost verbatim from Michigan Court Rule 6.508(D)(3)." *See Bradley v. Birkett,* 192 Fed. Appx. 468, 471-472 (6th Cir. 2006). In addition, the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). The Sixth Circuit has noted that "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005). Under the circumstances, the Michigan courts clearly invoked the provisions of M.C.R. 6.508(D)(3) to procedurally bar petitioner's claims. *Id.*[2]

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.[3] Petitioner, however, has not shown that appellate counsel was ineffective.

---

[2] Although the state trial court did not specify which of petitioner's claims were being denied because they had already been raised on direct appeal and rejected by the Michigan Court of Appeals, and which claims were being denied because they had not been raised on petitioner's direct appeal, this Court is able to differentiate which claims that the trial court was referring to, by comparing the claims that petitioner raised in his post-conviction motion with the ones that he raised on his direct appeal. *See Wiedbrauk v. Lavigne,* 174 Fed. Appx. 993, 1001 (6th Cir. 2006). Moreover, because petitioner admits that his fourth, fifth, sixth, eighth, and ninth claims had not been raised on his direct appeal, this Court can invoke the procedural bar contained in 6.508(D)(3) to procedurally default these claims. *Id.*

[3] Petitioner also raises ineffective assistance of appellate counsel as a distinct habeas claim. For the reasons that follow, however, habeas relief is not warranted on such a claim.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002)(internal quotations omitted). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade,* 265 F. Supp. 2d at 870 (internal citations omitted).

Petitioner has failed to show that by omitting the claims presented in his subsequent motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel filed a thirty page brief which raised three claims on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default. *See Grant v. Rivers,* 920 F. Supp. 769, 782 (E.D. Mich. 1996). Moreover, because the defaulted claims are not "dead bang winners", petitioner has failed to establish cause for his procedural default of failing to raise all of his claims on direct review. *See United States v. Stanfiel,* 4 Fed. Appx. 691, 693 (10th Cir. 2001); *Meade,* 265 F. Supp. 2d at 872.

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a

showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Petitioner has made no such showing. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). His remaining claims are thus barred by procedural default and do not warrant relief.

## E. A Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed.R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.

*Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack,* 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long,* 450 F. Supp. 2d at 755. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry #1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be denied leave to appeal *in forma pauperis.*

**SO ORDERED**.


Dated:   August 28, 2007                    s/Paul V. Gadola
                                            HONORABLE PAUL V. GADOLA
                                            UNITED STATES DISTRICT JUDGE

24

Certificate of Service

I hereby certify that on  August 28, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: _____ Debra M. Gagliardi _____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____ Jamie Berden Maclam _____.


s/Ruth A. Brissaud_____

Ruth A. Brissaud, Case Manager

(810) 341-7845